<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
CYRUS FORD,                      :
                                 :  Civil No. 05-5050 (FLW)
              Plaintiff,         :
                                 :
        v.                       :
                                 :      O P I N I O N
JOHN D'AMICO, et al.,            :
                                 :
              Defendants.        :
_____  :
```

**APPEARANCES:**

> CYRUS FORD, Plaintiff, <u>pro se</u>
> # 57828/53437A
> Mid-State Correctional Facility
> 8-West,  P.O. Box 866
> Range Road
> Wrightstown, New Jersey 08562

**WOLFSON**, District Judge

Plaintiff, Cyrus Ford ("Ford"), a state prisoner confined at the Mid-State Correctional Facility in Wrightstown, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915.  Based on plaintiff's affidavit of indigence, the Court grants Ford's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> and directs the Clerk of the Court to file the Complaint without pre-payment of the filing fee.

Having reviewed the Complaint to identify cognizable claims pursuant to 28 U.S.C. § 1915(e)(2), the Court concludes that

Ford's Complaint should be dismissed for failure to state a claim upon which relief may be granted.

## I.  BACKGROUND

Ford brings this civil rights action under 42 U.S.C. § 1983 alleging that he is being falsely imprisoned and held "hostage against [his] will" in violation of his civil rights. (Complaint, ¶ 4(b), (c)).  The Complaint names the following defendants: John Damico, Chairman of the New Jersey State Parole Board ("the Board"), and Devon Brown, Commissioner of the New Jersey Department of Corrections ("NJDOC").

Ford states that he was sentenced to a 23 to 35 year term as a first time offender, and under the old 1948 Parole Act, he would only have to serve one third of the 35 year term before becoming eligible for parole.  He alleges that his parole eligibility date would have been November 1, 1985 based on having served 11 years and 8 months and minus work and commutation credits.  (Compl., ¶ 6).  However, Ford did not have a parole hearing until July 7, 1987.  He states that when he complained about being overdue for parole, he was attacked by prison guards and thrown into administrative segregation for long periods of time.  (Compl., ¶ 6).

At his July 7, 1987 parole hearing, Ford was given an extended ten year future parole eligibility date.  He alleges that he was eligible for parole again in 1993 but was not taken

to the Parole Board because he was attacked by prison guards again for complaining.  His next parole hearing occurred on April 11, 1995.  The Board denied parole and ordered that plaintiff serve out his maximum term for 15 years until 2010.  Ford alleges that his work and commutation credits would reduce his term to 2002, but he was not released.  (Compl., ¶ 6).

Ford next argues that he legally maxed out on his two prison sentences on July 17, 2001.  He states that he is being held on a parole violation from 1973.[1]  Ford claims that this parole violation was never mentioned at his two parole hearings.  He also contends that he never had a parole revocation hearing, although he admits that he had a hearing on February 4, 2005 with respect to this issue.  (<u>Id</u>.)

While plaintiff was confined at the Riverfront State Prison, he incurred several institutional infractions which caused him to lose his commutation credits.  Ford alleges that these infractions were fabricated.  On July 11, 2005, the Classification Committee at Mid-State Correctional Facility allegedly notified Ford that his 450 days commutation credits

---

[1]  The NJDOC Inmate Offender search details on the Internet shows that Ford has two state court convictions in April 1976 and December 1979 for murder and aggravated assault and battery, respectively.  He received a maximum prison term of 30 years without parole on the murder conviction, and a five-year maximum term without parole on the assault conviction.  The report also shows that Ford was sentenced on February 4, 2005 to a youth term with respect to 1973 armed robbery charge.  He was sentenced to two years, 10 months and 21 days in prison.

were restored and that Ford had maxed out on February 4, 2005.
Ford is still incarcerated.  He claims that he has served almost
31 years on a 23 to 35 year term.  (Id.)

Ford seeks his immediate release and $500 million in damages
for his pain and suffering.  (Compl., ¶ 7).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Court is required to identify cognizable claims and to
sua sponte dismiss any claim that is frivolous, malicious, fails
to state a claim upon which relief may be granted, or seeks
monetary relief from a defendant who is immune from such relief,
where the plaintiff is proceeding in forma pauperis.  28 U.S.C. §
1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United
States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court
need not, however, credit a pro se plaintiff's "bald assertions"
or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,

4

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim, but lacked sufficient detail to function as a guide to discovery, was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C.

§ 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91
F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 LIABILITY</u>

Ford brings this action pursuant to 42 U.S.C. § 1983
alleging violations of his constitutional rights.  Section 1983
provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Further, a § 1983 action brought against a person in his or
her official capacity "generally represent[s] only another way of
pleading an action against an entity of which an officer is an
agent."  <u>Monell v. Dep't of Soc. Servs. Of City of New York</u>, 436
U.S. 658, 690 n.55 (1978).  "[I]n an official-capacity action,
... a governmental entity is liable under § 1983 only when the

entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).  Thus, a "defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

Here, Ford names only supervisory officials, the Chairman of the New Jersey State Parole Board and the Commissioner of the NJDOC.  However, he does not allege any facts that Commissioner Brown was personally involved with or had knowledge of the decision to deny parole and have Ford serve out his maximum term of 35 years.  Instead, he simply claims that Brown is "holding him hostage".  Thus, it would appear that Ford's claims against Commissioner Brown are predicated solely on the basis of supervisor liability.

As to Chairman Damico, however, the Complaint may be construed as alleging Damico's actual involvement, or at the

least, his knowledge of and participation in the decisions to deny parole because Damico is a member of the Board.  Therefore, the Complaint is not predicated solely on supervisor liability with respect to this defendant.  Accordingly, the Court will examine the various allegations asserted by Ford to determine if he states cognizable claims to withstand summary dismissal.

### IV.  <u>ANALYSIS</u>

Ford brings his Complaint under § 1983 alleging that he is being held beyond his eligible release date.  He also appears to allege that he has been denied due process and equal protection.

A.  <u>Claim for Immediate Release</u>

First, it appears that Ford takes issue with the fact that he has been denied parole and has been ordered to serve out his maximum term without parole.  It also appears that he may be challenging a recent decision in February 2005 denying parole. Ford seeks his immediate release from prison.

There is no federal constitutional right to parole.  <u>See Board of Pardons v. Allen</u>, 482 U.S. 369, 373 (1987); <u>Greenholtz v. Inmates of Nebraska Penal & Correctional Complex</u>, 442 U.S. 1 (1979); <u>Prevard v. Fauver</u>, 47 F. Supp.2d 539, 545 (D.N.J.), <u>aff'd</u> 202 F.3d 254 (3d Cir. 1999).  However, prisoners have a substantive due process right in being treated fairly during the parole process, <u>see</u> <u>Jubilee v. Horn</u>, 975 F. Supp. 761, 764-65 (E.D. Pa. 1997), <u>aff'd</u> 151 F.3d 1025 (3d Cir. 1998); <u>see also</u>

<u>Watson v DiSabato</u>, 933 F. Supp. 390, 393 (D.N.J. 1996)(prisoner has liberty interest in parole decisions, including notice of determination, statement by the government, and opportunity for prisoner to submit written response); but not every allegation of constitutional violations in parole proceedings is the proper subject for an action under § 1983.

In a series of cases beginning with <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973), the Supreme Court has analyzed the intersection of 42 U.S.C. § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254.  In <u>Preiser</u>, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate release.  411 U.S. at 476.  The prisoners did not seek compensatory damages for the loss of their credits.  411 U.S. at 494.  The Court held that "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." <u>Id.</u> at 500.

Here, Ford is clearly seeking his immediate release from prison on claims that he was wrongfully denied parole in 1987 and

1995, and again in February 2005. These claims are more appropriately characterized as claims seeking habeas relief and must be brought in a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. With respect to the decisions in 1987 and 1995, it would appear that Ford may now be time-barred from bringing a federal habeas action. See 28 U.S.C. § 2244(d). Further, there is no indication that Ford has exhausted his state court remedies with respect to these denial of parole decisions. Indeed, as to the recent February 2005 decision, Ford does not allege that he has appealed the Board's decision or exhausted any of his state court remedies before bringing this action. Thus, the Complaint should be dismissed without prejudice to him asserting a § 2254 habeas claim once he has exhausted his state court remedies, and if the one-year limitations period has not expired.

Next, to the extent that Ford is seeking money damages with respect to his denial of parole, he is precluded from asserting any such claims pursuant to Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Court addressed a corollary question to that presented in Preiser, whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983, a form of relief not available through a habeas corpus proceeding. Again, the Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

10

> [I]n order to recover damages for allegedly
> unconstitutional conviction or imprisonment, or for
> other harm caused by actions whose unlawfulness would
> render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence
> has been reversed on direct appeal, expunged by
> executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into
> question by a federal court's issuance of a writ of
> habeas corpus, 28 U.S.C. § 2254.  A claim for damages
> bearing that relationship to a conviction or sentence
> that has <u>not</u> been so invalidated is not cognizable
> under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further

instructed district courts, in determining whether a complaint

states a claim under § 1983, to evaluate whether a favorable

outcome would necessarily imply the invalidity of a criminal

judgment.

> Thus, when a state prisoner seeks damages in a § 1983
> suit, the district court must consider whether a
> judgment in favor of the plaintiff would necessarily
> imply the invalidity of his conviction or sentence; if
> it would, the complaint must be dismissed unless the
> plaintiff can demonstrate that the conviction or
> sentence has already been invalidated.  But if the
> district court determines that the plaintiff's action,
> even if successful, will <u>not</u> demonstrate the invalidity
> of any outstanding criminal judgment against the
> plaintiff, the action should be allowed to proceed, in
> the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court further held that

"a § 1983 cause of action for damages attributable to an

unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated."  <u>Id.</u> at 489-90.

More recently, in <u>Edwards v. Balisok</u>, 510 U.S. 641 (1997),

the Supreme Court applied the lessons of <u>Preiser</u> and <u>Heck</u> to a

state prisoner action, seeking compensatory and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but not necessarily challenging the result and not seeking the restoration of the good-time credits.  Again, the Court emphasized that such a claim is not cognizable under § 1983 if a favorable outcome would necessarily imply the invalidity of the challenged judgment, there the disciplinary finding and punishment.  520 U.S. at 646-8.

Finally, in Benson v. New Jersey State Parole Board, 947 F. Supp. 827 (D.N.J. 1996), the petitioner sought both a writ of habeas corpus and declaratory relief and punitive damages under § 1983 for allegations that he had been denied a timely parole hearing, and that his parole eligibility date had been miscalculated.  See id. at 828.  The Court held that a decision in Benson's favor would "necessarily entail a determination of Benson's proper initial parole eligibility date."  Id. at 832. Further, the Court determined that Benson's suit was an attack on the duration of confinement because he sought to "correct" his parole eligibility records by way of declaratory judgment.  See id. (citations omitted).  Because Benson ultimately sought an earlier parole eligibility date, his claims were reviewable by habeas petition.  See id. (citation omitted).

12

Here, Ford alleges that he should have been released in
February 2005, or earlier, and that his continued incarceration
is unlawful.  He specifically seeks immediate release from
prison.  Thus, Ford is actually contesting the decision denying
parole for the duration of his maximum prison sentence and the
determination of his release date.  Such a claim must be raised
by way of a habeas corpus petition after exhaustion of state
remedies.  See, e.g., Murphy v. Travis, 36 Fed. Appx. 679, 2002
WL 1283685 (2d Cir. June 10, 2002) (unpubl., text in Westlaw);
Butterfield v. Bail, 120 F.3d 1023 (9th Cir. 1997); Burkett v.
Love, 89 F.3d 135 (3d Cir. 1996); Schafer v. Moore, 46 F.3d 43,
45 (8th Cir. 1995).  As stated above, it is not alleged in the
Complaint that Ford has exhausted his state court remedies before
proceeding with this action.  Therefore, the claim challenging
the parole decisions and seeking immediate release will be
dismissed without prejudice to Ford bringing such claim by way of
a federal habeas petition after he has exhausted his state court
remedies.[2]

B.   Equal Protection Claim

Ford also argues that defendants' actions in denying him
parole and forcing him to serve out his maximum terms violates

---

[2]   To the extent that Ford argues that he was entitled to
release from prison some time ago, this claim appears to be
disputed by the facts.  The NJDOC offender search shows that
Ford's projected maximum release date is October 2, 2007.

13

his right to equal protection under the law.  However, prisoners in general are not members of a suspect class, and Ford was not denied a fundamental right.  See <u>Hodges v. Klein</u>, 562 F.2d 276 (3d Cir. 1977); <u>Myrie v. Comm'r, N.J. Dept. Of Corrections</u>, 267 F.3d 251, 263 (3d Cir. 2001)(noting that inmates, as a class, do not constitute a "discrete and insular" minority); <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307 (3d Cir.), <u>cert</u>. <u>denied</u> 533 U.S. 953 (2001).

An equal protection claim only requires that a classification which results in unequal treatment bear some rational relationship to a legitimate state purpose.  "[I]t is perfectly rational to differentiate between prisoners on the basis of the nature of the crime they have committed."  <u>Hluchan v. Fauver</u>, 480 F. Supp. 103, 109 (D.N.J. 1979).  As the court explained in <u>Hluchan</u>:

> The Commissioner certainly may declare that individuals who perpetrate specific types of crimes are conclusively presumed not to be trustworthy enough to be granted minimum custody and its attendant privileges.  It is not irrational for the Commissioner to conclude, for example, that rapists should never be allowed access to the general public prior to release from prison, while armed robbers can at least be considered for programs which will permit them such access.  It is precisely this sort of decision that New Jersey has placed in the Commissioner's sound discretion.  The judgments involved must be made by the Commissioner, not the courts.

480 F. Supp. at 109.

Here, there is no indication that the Board's decision to deny parole did not bear a rational relationship to a legitimate

14

state purpose and the effective administration of its prisons.
Ford was sentenced to a thirty year and a five year prison term
without parole for murder and aggravated assault.  Moreover, the
Court finds it perfectly reasonable for the Board to conclude
that inmates like Ford serving long stretches for murder are not
good risks for parole, especially given his prison infractions
while incarcerated.  Therefore, there is no legal basis for
Ford's claim, and he has alleged no facts to support a claim,
that he was denied equal protection under the law.  Accordingly,
this claim will be dismissed for failure to state a claim.

C.   Denial of Due Process Claim

     Next, Ford asserts that he was denied due process with
respect to his parole eligibility hearings.  Namely, Ford alleges
that the Board delayed in holding his eligibility hearings and
his parole revocation hearing, and miscalculated his maximum
release date.

     New Jersey law provides that a parole eligibility hearing
shall be conducted at least 30 days or as soon as practicable in
advance of an inmate's actual parole eligibility date.  N.J.A.C.
10A:71-3.17.  In this case, Ford alleges that he was first
eligible for parole in November 1985 and then again in 1993.  His
parole eligibility hearings were not conducted until July 7, 1987
and April 11, 1995, respectively.  As to the parole revocation
hearing, apparently based on a youth offense in 1973, Ford states

that he was not provided a hearing until February 4, 2005, when his two adult sentences had allegedly expired.  Ford claims that he should have been released in February 2005 or earlier.

As stated above, to the extent Ford is seeking his immediate release, this must be brought under 28 U.S.C. § 2254.  Moreover, to the extent that Ford seeks monetary damages on the ground that his parole hearings were delayed or untimely, such action will be dismissed without prejudice pursuant to <u>Heck</u> and <u>Benson v. New Jersey State Parole Board</u>, 947 F. Supp. at 832.  Ford is actually challenging the result of the hearings and not the constitutionality of the procedures used since a decision in his favor would entail a determination of his parole eligibility date or his projected release date.

D.   <u>Retaliation Claim</u>

Finally, Ford appears to allege that he was beaten and placed in administrative segregation when he complained about the delay in his parole eligibility hearings in 1985 and 1993.  These allegations might support a claim of retaliation in violation of the First and Fourteenth Amendments.

However, the Court finds that any retaliation claim now asserted by Ford is time-barred.  A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."

16

Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).  Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.); Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997) (applying Pino to current § 1915(e)).  The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) and 42 U.S.C. § 1997e (governing actions brought with respect to prison conditions) that federal courts review and dismiss any complaint that fails to state a claim parallels the provision in 28 U.S.C. § 1915(e).

Civil rights claims, such as that presented here, are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury

actions.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985).
Accordingly, New Jersey's two-year limitations period on personal
injury actions, N.J. Stat. Ann. § 2A:14-2, governs Shihadeh's
claims.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d
Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d
23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an
action for an injury to the person caused by a wrongful act,
neglect, or default must be commenced within two years of accrual
of the cause of action.  Cito, 892 F.2d at 25; accord Brown v.
Foley, 810 F.2d 55, 56 (3d Cir. 1987).  Unless their full
application would defeat the goals of the federal statute at
issue, courts should not unravel states' interrelated limitations
provisions regarding tolling, revival, and questions of
application.  Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory
tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling
because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing
tolling because of nonresidency of persons liable).  New Jersey
law permits "equitable tolling" where "the complainant
has been induced or tricked by his adversary's misconduct into
allowing the filing deadline to pass," or where a plaintiff has
"in some extraordinary way" been prevented from asserting his
rights, or where a plaintiff has timely asserted his rights
mistakenly by either defective pleading or in the wrong forum.

18

See <u>Freeman v. State</u>, 347 N.J. Super. 11, 31 (citations omitted), <u>certif. denied</u>, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  <u>Id.</u>

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  <u>See</u> <u>Lake v. Arnold</u>, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff
> with respect to her cause of action; (2) where the
> plaintiff has been prevented from asserting her claim
> as a result of other extraordinary circumstances; or
> (3) where the plaintiff asserts her claims in a timely
> manner but has done so in the wrong forum.

<u>Id.</u> n.9.

The retaliation claim asserted here accrued in 1985 and 1993, more than twenty years and thirteen years, respectively.[3] This Complaint is dated on or about October 15, 2005, and was

---

[3] A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action." <u>Oshiver v. Levin Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1385 (3d Cir. 1994).  "Plaintiff's actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." <u>Fassnacht v. United States</u>, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing <u>Oshiver</u>, 38 F.3d at 1386).

received by the Clerk's Office on or about October 19, 2005.
Ford alleges no facts or extraordinary circumstances that would
permit statutory or equitable tolling under either New Jersey or
federal law.[4]   Thus, any retaliation claim in this instance is
time-barred and will be dismissed with prejudice.

### V.   CONCLUSION

For the reasons stated above, the Court will dismiss the
Complaint with prejudice, as against the defendant, Commissioner
Devon Brown, for failure to state a claim upon which relief may
be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1).   Additionally, plaintiff's retaliation claim and
denial of equal protection claim, as against the remaining
defendant, will be dismissed with prejudice for failure to state
a claim.   Finally, the remaining claims seeking immediate release

---

[4] The Court acknowledges the allegations that Ford was
placed in administrative segregation when he complained to the
Parole Board about the delay in his hearing.   However, there are
no allegations that Ford was prevented from filing a complaint in
federal court at that time.   In fact, it appears that Ford was
able to file federal actions in 1992 and 1996.   See Ford v.
Trent, Civil No. 92-3124 (AET); Ford v. Atty. General of NJ, et
al., 96-4826 (AJL). Therefore, there is no excuse for equitable
tolling of the limitations period for this substantial period of
time.

and alleging denial of due process will be dismissed without
prejudice for failure to state a claim at this time.  An
appropriate Order follows.


                                    s/Freda L. Wolfson
                                    FREDA L. WOLFSON
                                    United States District Judge
DATED: May 22, 2006



                                    21